

**FILED**

2:02 pm, 5/15/25

**Margaret Botkins**
**Clerk of Court**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

UNITED STATES OF AMERICA,

        Plaintiff,

VS.

GEORGE OSTERTAG,

        Defendant,

Case No.  2:24-CR-84-ABJ

---

### ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS COUNTS ONE AND TWO OF THE INDICTMENT UNDER THE SECOND AMENDMENT

---

THIS MATTER comes before the Court on Defendant George Ostertag's *Motion to Dismiss the Indictment under the Second Amendment* (ECF No. 50) and *Motion to Dismiss Count Two of the Indictment under the Second Amendment* (ECF No. 51), both filed November 4, 2024. The United States filed its *Responses* (ECF No. 68; ECF No. 69) on January 10, 2025. Now, having reviewed the parties' filings and the applicable law, and being otherwise fully advised, the Court finds that Defendant's *Motions* shall be **DENIED**.

### BACKGROUND

On January 24, 2024, Wyoming Highway Patrol Sergeant Chad Bracken pulled over Defendant George Ostertag ("Defendant") while he was driving home from Country Pride, a restaurant in Rawlins, Wyoming, where he worked as a kitchen manager. ECF

No. 52 at 2. While Sergeant Bracken ran checks on Mr. Ostertag's information, WHP Trooper Andres Martinez deployed his narcotics detection dog "K9 Becky" to perform a free-air sniff around Defendant's vehicle. *Id*. at 3. After K9 Becky positively alerted, the officers conducted a search of the vehicle which revealed a Beretta 9mm pistol with an obliterated serial number between the driver's seat and the center console. ECF No. 67 at 2.

Following the search, the officers provided *Miranda* warnings to Defendant before arresting him for possession of the pistol found in his car. ECF No. 67 at 2; ECF No. 52 at 4. Defendant was indicted on one count of possessing a firearm and ammunition as a felon under 18 U.S.C. § 922(g)(1) and one count of possessing a firearm with an obliterated serial number under 18 U.S.C. § 922(k). Defendant has now brought the instant *Motions* asserting that those statutes are unconstitutional under the Second Amendment and that the resulting charges against him must be dismissed. Specifically, Defendant asserts both facial and as-applied challenges to 18 U.S.C. § 922(g)(1) in his *Motion to Dismiss the Indictment under the Second Amendment* (ECF No. 50), as well as a facial challenge to 18 U.S.C. § 922(k) in his *Motion to Dismiss Count Two of the Indictment under the Second Amendment* (ECF No. 51).

## RELEVANT LAW

The Second Amendment to the Constitution states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court commenced the modern era of Second Amendment jurisprudence and

held that this language codified an expansive pre-existing individual right "to possess and carry weapons in case of confrontation." 554 U.S. 570, 592 (2008). However, the *Heller* Court noted that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id*. at 626. The Court recognized an "important limitation on the right to keep and carry arms[:]" that the sorts of weapons protected by the Second Amendment are those "in common use at the time." *Id*. at 627 (citing *United States v. Miller*, 307 U.S. 174, 179 (1939)). Consistent with "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons[,]'" the Second Amendment therefore "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes[.]" *Heller*, 554 U.S. at 625–27. The Court also highlighted the continuing validity of certain specific and well-established gun restrictions, for instance stating that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id*. at 626–27.

Following *Heller*, lower courts developed a two-part test to assess Second Amendment claims. First, the government could justify a regulation potentially burdening Second Amendment rights by "establish[ing] that the challenged law regulates activity falling outside the scope of the right as originally understood." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 18 (2022). If the government proved "that the regulated conduct [fell] beyond the Amendment's original scope, then the analysis stop[ped] there; the regulated activity [was] categorically unprotected." *Id*. (internal quotations omitted). However, "if the historical evidence at this step [was] inconclusive or suggest[ed] that the regulated activity [was] *not* categorically unprotected," the courts

3

would proceed with the inquiry. *Id* (internal quotations omitted). At the second step,

courts applied a means-ends balancing test considering "how close the law [came] to the

core of the Second Amendment right and the severity of the law's burden on that right."

*Id*. (internal quotations omitted).

In 2022, the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*

eschewed the means-ends-based second step to focus only on the historical component.

597 U.S. 1 (2022). *Bruen* explained that

> the standard for applying the Second Amendment is as follows: When the
> Second Amendment's plain text covers an individual's conduct, the
> Constitution presumptively protects that conduct. The government must
> then justify its regulation by demonstrating that it is consistent with the
> Nation's historical tradition of firearm regulation. Only then may a court
> conclude that the individual's conduct falls outside the Second
> Amendment's unqualified command.

*Id*. at 24. The Court further provided that in its new second step examining whether a

regulation is "consistent with the Nation's historical tradition of firearm regulation[,]"

courts should look to "relevantly similar" historical analogues of modern regulations. *Id*.

at 24, 29. According to the Court, laws might be "relevantly similar" based on "how and

why [they] burden a law-abiding citizen's right to armed self-defense." *Id*. at 29 (citing

*Heller*, 554 U.S. at 599; *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767 (2010)).

However, the Court cautioned that "analogical reasoning under the Second Amendment

is neither a regulatory straightjacket nor a regulatory blank check." *Bruen*, 597 U.S. at 30.

Courts' upholding of "every modern law that remotely resembles a historical analogue"

would risk "endorsing outliers that our ancestors would never have accepted." *Id*.

(internal quotations omitted). Still, "analogical reasoning requires only that the

government identify a well-established and representative historical *analogue*, not a historical *twin*[,]" and even "a modern-day regulation [that] is not a dead ringer for historical precursors … may be analogous enough to pass constitutional muster." *Id*.

In *United States v. Rahimi*, the Supreme Court applied its new *Bruen* test to 18 U.S.C. § 922(g)(8), a federal statute that prohibits individuals subject to a domestic violence restraining order from possessing a firearm. 602 U.S. 680, 684 (2024). While the Court did not question that the challenged law "addresses individual conduct covered by the text of the Second Amendment," *id*. at 708 (Gorsuch, J., concurring), it found that the historical tradition of firearm regulations consistently included "provisions barring people from misusing weapons to harm or menace others" and that § 922(g)(8) was analogous to founding era laws ensuring that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id*. at 693, 698. In its analysis, the Court also restated its conclusions from *Heller* and *Bruen* that "the right secured by the Second Amendment is not unlimited" and that the Constitution "permits more than just those regulations identical to ones that could be found in 1791." *Id*. at 690–92.

## ANALYSIS

Based on this legal backdrop, the Court now considers Defendant's facial and as-applied challenges to 18 U.S.C. § 922(g)(1), which prohibits possession of firearms by felons, as well as his facial challenge to 18 U.S.C. § 922(k), which prohibits possession of firearms with obliterated serial numbers. None of these challenges pass muster.

## I.    Defendant's challenges to 18 U.S.C. § 922(g)(1) fail.

### a.    Section 922(g)(1) is constitutional under Tenth Circuit precedent.

The Tenth Circuit first considered § 922(g)(1)'s constitutionality in its 2009 decision in *United States v. McCane*. 573 F.3d 1037. As *McCane* was decided prior to *Bruen* and *Rahimi*, the Tenth Circuit did not conduct any historical analysis, but rather applied the Supreme Court's language in *Heller* that "nothing in [that] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 1047 (citing *Heller*, 554 U.S. at 626). Based on that dictum, the *McCane* court found the statute to be constitutionally valid. *Id.*

Section 922(g)(1) faced another Second Amendment challenge before the Tenth Circuit in *Vincent v. Garland* ("*Vincent I*") in 2023, this time after the Supreme Court established its historical test in *Bruen*. *Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023), *cert. granted, judgment vacated*, 144 S. Ct. 2708 (2024), and *adhered to sub nom. Vincent v. Bondi*, 127 F.4th 1263 (10th Cir. 2025). The *Vincent I* court held that despite *Bruen*'s new test, the Supreme Court still "didn't appear to question the constitutionality of longstanding prohibitions on possession of firearm by convicted felons." *Id.* at 1201. Rather, the Tenth Circuit noted, six of the nine Justices "pointed out that *Bruen* was not casting any doubt on [the relevant] language in *Heller*" in their concurring and dissenting opinions. *Id.* The *Vincent I* court also observed that *Bruen* "approved the constitutionality of regulations requiring criminal background checks before applicants could get gun permits," which the Tenth Circuit recognized as an implication "that it was constitutional to deny firearm licenses to individuals with felony convictions." *Id.* at 1202. From those

indications, the Tenth Circuit found that *Bruen* left *McCane* intact, meaning that § 922(g)(1) remained constitutional based on *Heller*'s undisturbed dictum and was excepted from *Bruen*'s otherwise-required historical analysis. *Id.* at 1201–02.

The Supreme Court granted certiorari as to *Vincent I* in 2024, by which time it had applied *Bruen*'s historical test to § 922(g)(8) in *Rahimi. See Vincent v. Garland*, 144 S. Ct. 2708 (2024) ("*Vincent II*"); *Rahimi*, 602 U.S. at 693. Without conducting its own analysis, the Court vacated the Tenth Circuit's judgment and remanded *Vincent I* for further consideration in light of *Rahimi. Vincent II*, 144 S. Ct. at 2708. However, the Tenth Circuit on remand stayed true to its prior conclusions, holding that nothing in either *Rahimi* or *Bruen* "indisputably and pellucidly abrogated" its binding precedent in *McCane. Vincent v. Bondi*, 127 F.4th 1263, 1265 (10th Cir. 2025) ("*Vincent III*"). Since then, the Tenth Circuit in recent cases has continued to hold that § 922(g)(1) is constitutional and that "*McCane* remains good law." *United States v. Vickers*, No. 24-8012, 2025 WL 1355433 (10th Cir. May 9, 2025); *United States v. Talbot*, No. 23-8025, 2025 WL 485708 (10th Cir. Feb. 13, 2025).

### b. *Vincent III* forecloses Defendant's facial challenge to § 922(g)(1).

As *McCane* remains binding precedent within the Tenth Circuit even after *Bruen* and *Rahimi*, Defendant's facial challenge to § 922(g)(1) fails. *See Vincent III*, 127 F.4th at 1265. Section 922(g)(1) is a felon dispossession law and therefore presumptively valid under *Heller*, and this Court need not undertake the analysis otherwise required by *Bruen. Id.*; *McCane*, 573 F.3d at 1047; *Heller*, 554 U.S. at 626.

  **c.** ***Vincent III*** **forecloses Defendant's as-applied challenge to § 922(g)(1).**

  In addition to holding that § 922(g)(1) remains broadly constitutional, *Vincent III*

also rejected an individualized approach to determining the statute's validity as applied to

different types of offenders. *Vincent III*, 127 F.4th at 1266. This conclusion stemmed

from *McCane*, in which the Tenth Circuit first upheld the statute "without drawing

constitutional distinctions based on the type of felony involved." *Id.* (citing *McCane*, 573

F.3d at 1047); *accord United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024)

("there is no need for felony-by-felony litigation regarding the constitutionality of §

922(g)(1)").

  This binding precedent forecloses Defendant's as-applied challenge. Contrary to

Defendant's contentions, the Court need not consider whether there is a "relevantly

similar historical tradition of firearm dispossession with respect to the circumstances of

[Defendant's] non-violent felony history[,]" whether Defendant poses a "demonstrated

threat[] of physical violence[,]" or whether Defendant possessed the firearm at issue "for

the core lawful purpose of self-defense." *See* ECF No. 50 at 16–17. Rather, § 922(g)(1)

validly applies to *any* felon in possession of a firearm regardless of their specific

circumstances. *Vincent III*, 127 F.4th at 1266.

**II. 18 U.S.C. § 922(k) is facially constitutional.**

  As neither this Court nor the Tenth Circuit has considered the constitutionality of

18 U.S.C. § 922(k) since *Bruen* and *Rahimi*, the test established in those cases is properly

applied when considering Defendant's facial challenge to that statute here. The first step

in that test is to determine whether the Second Amendment covers the regulated conduct at issue. *Bruen*, 597 U.S. at 24. However, the conduct which § 922(k) regulates—the possession and transportation of firearms with obliterated serial numbers—is not so protected.

As the Supreme Court has repeatedly stated, "the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626; *Rahimi*, 602 U.S. at 690. The Constitution protects arms "in common use," but it "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625, 627. This limitation is consistent with the "historical understanding of the scope of the right," which has likewise traditionally allowed restrictions against "the carrying of dangerous and unusual weapons." *Id.*; *Rahimi*, 602 U.S. at 691.

Unlike the District of Columbia's general prohibition on handgun possession (struck down in *Heller*) and New York's proper-cause requirement to carry a handgun in public (struck down in *Bruen*), section 922(k)'s prohibition on the possession of guns with obliterated serial numbers in no way burdens the right to bear those arms which are "in common use" and "possessed by law-abiding citizens for lawful purposes." *See Heller*, 554 U.S. at 574, 625, 627; *Bruen*, 697 U.S. at 11–12. Firearms with obliterated serial numbers are functionally identical to those with intact serial numbers; the only substantive difference is that the former are "more difficult for law enforcement to trace and thus have value primarily for persons seeking to use them for illicit purposes." *United States v. Trujillo*, 670 F. Supp. 3d 1235, 1241 (D.N.M. 2023), *appeal dismissed*, No. 23-2080, 2023 WL 5093358 (10th Cir. Aug. 9, 2023) (internal quotations omitted).

For this reason, this Court agrees with its sister district and the Third Circuit that "there would appear to be no compelling reason why a law-abiding citizen would prefer an unmarked firearm" to defend himself. *Id.*; *United States v. Marzzarella*, 614 F.3d 85, 95 (3d. Cir. 2010). As the firearms contemplated under 18 U.S.C. § 922(k) are not typically possessed by law-abiding citizens for lawful purposes, the Court therefore holds that § 922(k) does not invade the Second Amendment's protections. *See Marzzarella*, 614 F.3d at 99 (stating that the burden of § 922(k) "will almost always fall only on those intending to engage in illicit behavior"). This conclusion is consistent with the findings of numerous other courts across the country. *See, e.g.*, *United States v. Avila*, 672 F. Supp. 3d 1137, 1144 (D. Colo. 2023); *Trujillo*, 670 F. Supp. 3d at 1241–42; *United States v. Bradley*, 2023 WL 2621352, at *5 (S.D.W. Va. Mar. 23, 2023); *United States v. Serrano*, 651 F.Supp.3d 1192, 1211–12 (S.D. Cal. Jan. 17, 2023); *United States v. Tita*, 2022 WL 17850250, at *7 (D. Md. Dec. 22, 2022); *United States v. Reyna*, 2022 WL 17714376, at *5 (N.D. Ind. Dec. 15, 2022); *United States v. Holton*, 639 F.Supp.3d 704, 710–11 (N.D. Tex. Nov. 3, 2022).

Finally, as § 922(k) does not implicate the Second Amendment, the Court need not proceed to *Bruen* and *Rahimi*'s historical analysis.

## CONCLUSION

For the reasons set forth above, Defendant's challenges to 18 U.S.C. § 922(g)(1) and § 922(k) fail. Binding Tenth Circuit precedent in *McCane* and *Vincent III* holds § 922(g)(1) to be constitutional and forecloses Defendant's facial and as-applied challenges thereof. *McCane*, 573 F.3d at 1047; *Vincent III*, 127 F.4th at 1265–66. Furthermore, §

10

922(k) does not regulate conduct protected by the Second Amendment, defeating

Defendant's facial challenge as to that statute.

Therefore, **IT IS HEREBY ORDERED** that Defendant's *Motion to Dismiss the*

*Indictment under the Second Amendment* (ECF No. 50) and *Motion to Dismiss Count*

*Two of the Indictment under the Second Amendment* (ECF No. 51) are **DENIED**.


Dated this _15th_ day of May, 2025.


Alan B. Johnson
United States District Judge